Ashley W. CONGER, Plaintiff

v.

UNITED STATES of America, Defendant.

Civ. No. 0711.

United States District Court
D. Nebraska.

Aug. 11, 1960.

**770**

Donald Ross, Omaha, Neb., for plaintiff.

Charles H. Magnuson, Department of Justice, Washington, D. C. and Thomas J. Skutt, Asst. U. S. Atty., Omaha, Neb., for defendant.

ROBINSON, Chief Judge.

This is a suit for the refund of income taxes, interest and penalties, which were assessed and collected from the plaintiff for the calendar year 1944, pursuant to the provisions of Section 293, Internal Revenue Code, 1939, 26 U.S.C.A. § 293.[1]

---

1. Internal Revenue Code of 1939:
"Sec. 293. Additions to the tax in case of deficiency.

\* \* \* \* \*

"(b) *Fraud.* If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2). 53 Stat. 88 (26 U.S.C.A. § 293)."

Plaintiff timely filed his income tax return for the year 1944 showing a tax liability of $1,644.47, which was paid upon the filing of the return. The return indicated total receipts from business of $35,993.99 and adjusted gross income of $7,882.13. On May 6, 1958, income tax deficiencies, together with a civil fraud penalty, were assessed against the plaintiff for the year 1944 in the amount of $7,441.58. The deficiency assessment and interests were paid and, on September 8, 1958, plaintiff filed a claim for refund for the total assessment plus interest from the date of payment. The claim for refund was denied and plaintiff filed this action, pursuant to Section 1346 (a) (1) Title 28 U.S.C.A., seeking a return of both the deficiency and the civil fraud penalty.

In his complaint plaintiff alleges that the statute of limitations (Section 6501 (a), 26 U.S.C.A.) on the assessment and collection of any deficiency in tax due for the calendar year 1944, expired on or about March 15, 1948, and that if any additional tax was owing, it did not come within the exceptions to said statute of limitations or any other federal statute.

The Government contended that all of the deficiencies assessed against the plaintiff were due, in whole or in part, to fraud on the part of plaintiff with the intent to evade the tax. The Government alleged that the fraud on the part of the plaintiff consisted in wilfully and knowingly failing to report in his income tax return for the taxable year 1944 large amounts of taxable income received by him in that year, " * * * and/or wilfully and knowingly claiming deductions from income on his income tax return, * * * " which were not in fact deductible, with intent to evade taxes.

Section 6501, Title 26, U.S.C., provides as follows:

"(a) General rule. Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

\*     \*     \*     \*     \*     \*

"(c) Exceptions.—

"(1) False return.—In the case of a false return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

"(2) Willful attempt to evade tax. —In case of a willful attempt in any manner to defeat or evade tax imposed by this title * * * the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

The basic questions to be resolved in this case are: Whether plaintiff failed to properly report his income for the year 1944, and if so, whether such a failure was due to a fraudulent intent on the part of plaintiff to evade payment of the tax.

In the present action the Government's case centers around the following facts:

During the period in question plaintiff owned and operated Conger Jewelry, a small retail jewelry and watch repair shop in Grand Island, Nebraska. He started the business in 1943 with very little in the way of cash capital and was in complete control of the operation with respect to sales, repairs and receipt of funds. His wife aided him to some extent in the operation of the business, but she was primarily concerned with bookkeeping and the business records. Prior to opening this business, plaintiff consulted Vernon Rice, an officer of the Commercial National Bank, who agreed that the bank would help finance plaintiff in his new venture and that he would otherwise advise plaintiff in his business operations. During the period 1943 to 1953 plaintiff counselled with Mr. Rice on financial matters, and Mr. Rice prepared plaintiff's income tax returns for these years. The business was operated on a

"cash basis", wherein the cash receipts for each day were deposited in a cash register. After a period of three or four days, plaintiff personally would deposit the cash receipts from the business in various banks. The evidence shows that plaintiff maintained accounts in several banks during the year 1944; including the Commercial National Bank of Grand Island, Overland National Bank, First National Bank, Home Federal Savings and Loan, and the Equitable Building and Loan. Deposits of cash representing receipts of the business were made by plaintiff in each of these banks. The bulk of the receipts, listed on plaintiff's 1944 return, were deposited to the checking account of the Commercial National Bank. Deposits approximating $17,000 were made to plaintiff's other accounts. Based upon the total deposits made in the various bank accounts of plaintiff during the year 1944, the Government contended that plaintiff had a total of $10,895.64 in unreported receipts for the year in question. However, the parties stipulated that $2,330 of this amount represented a loan from the father of plaintiff's wife.

It appears from the record that plaintiff's 1944 return was first checked by the Internal Revenue in May, 1954, and subsequent to that time the deficiency assessment was made on a net worth basis. At the commencement of this trial counsel for the Government stated that they would use bank deposit computations to prove the alleged deficiency. Plaintiff contended that these computations had little if any value because of the speculative possibility that funds may have been deposited from non-income sources, and that the bank deposit computations were mere opinions or conclusions of the Government accountant.

■ Since plaintiff's complete business records were no longer available after 14 years, and since the receipts of the business were regularly deposited in the bank accounts, the Government properly resorted to plaintiff's bank statements and cancelled checks for the period in question. Holbrook v. United States, 5 Cir., 216 F.2d 238.

Plaintiff contended that certain amounts in his checking account did not represent gross receipts of the business. He testified that service men sent money to him to be held for their future purchases; that certain amounts were withdrawn for buying trips and later redeposited; that there were insufficient fund checks deposited to his account; and that there were "exchange checks" processed through his account. He further testified that certain of the amounts in his checking account represented gifts from his father and father-in-law.

■ While the Court recognizes that some of the items could have come from non-income sources, the Government is not required to negative every possible hypothetical source of non-taxable income. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, nor is it required to link each deposit with an identifiable income producing source. Goe v. Commissioner, 3 Cir., 198 F.2d 851. The Government, by using the bank deposit method, has established an understatement of income. Unexplained funds or property in the hands of the plaintiff established a prima facie case of understatement of income and it was upon the plaintiff to overcome the logical inferences which may be drawn from these proven facts. While plaintiff's evidence in some instances could be held to account for certain of the items deposited, he has not presented specific evidence which will overcome the inference of an understatement of income.

■ The remaining question is whether plaintiff was guilty of fraud with intent to evade the tax in making his return; and the burden of proving such fraud was upon the Government. Hargis v. Goodwin, 8 Cir., 221 F.2d 486, 489; Reeves v. United States, D.C.Neb., 168 F.Supp. 720, 722, where this Court said: "Fraud is never presumed and cannot be lightly inferred. Fraud, as used in Section 293(b), means an actual and inten-

tional wrongdoing and the intent required is the specific purpose to evade income tax believed to be owing. Owens v. United States, D.C.Ark., 98 F.Supp. 621, 627, affirmed, 8 Cir., 197 F.2d 450. Hence the question resolves itself into one of fact as to whether the deficiencies were the result of a willful effort to evade an income tax liability."

■ It is well settled that the acknowledgment of a deficiency will not, standing alone, sustain the Government's burden of proving the requisite fraud, nor will the failure of the taxpayer to contest the adjustments made in determining the deficiencies lessen the burden. Reherman v. C. I. R., 6 Cir., 240 F.2d 953, 954.

The uncontradicted evidence shows that petitioner took no part in the preparation of his return. The accountant Rice testified that he prepared the return from the information furnished him by plaintiff's wife at the store; that plaintiff's wife kept all of the business records; and that plaintiff knew practically nothing about accounting. The evidence shows that plaintiff deposited all of the business receipts during the year in question; that his wife maintained the business records and that he relied upon his accountant for business and income tax assistance. His accountant prepared the return in pencil at plaintiff's store, completed the final copy at his office and had plaintiff sign the return. Plaintiff checked the amount of tax due and paid it when the return was filed.

■ Taxation is a practical matter and plaintiff cannot terminate his duty to pay income taxes or avoid liability for failure to pay taxes by neglecting to keep account of his income or familiarize himself with the necessary procedures for everyday business operations. However, failure to observe the established rules of everyday business is not enough in itself to prove fraud. There can be no doubt that plaintiff was negligent in relying upon others to maintain the records of his business. But the record here will not justify a finding of intentional wrongdoing with the requisite intent and purpose to evade income tax believed to be due and owing. There is no evidence in this record of intentional concealment or deliberate misrepresentation. Although intent is a state of mind, it is nonetheless a fact to be proven by the evidence and it must appear as a positive factor. The entire record is to be searched for evidence of the intent to defraud and, on the whole case, fraud must be clearly and convincingly established. Valetti v. C. I. R., 3 Cir., 260 F. 2d 185; Iley v. Commissioner, 19 T.C. 631.

It stands conceded that the deficiency assessment must have been made within three years after the return was filed, unless the return was false and fraudulent with intent to evade taxes, or involved a wilful attempt to evade taxes. 26 U.S.C.A. § 6501(a) and (c). For the reasons already stated, the deficiency finding is supported by a preponderance of the evidence, however, on consideration of the whole record it has not been clearly and convincingly established that the deficiency was the result of fraud, or involved a wilful attempt to evade taxes, and the assessment was therefore void.

The foregoing shall constitute the Court's findings of fact and conclusions of law under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Judgment will be for the plaintiff. Counsel for plaintiff will prepare and submit a suitable order within 20 days.