ELLIS V. BROWN and DOROTHY J. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 5746-75
United States Tax Court
T.C. Memo 1977-138; 1977 Tax Ct. Memo LEXIS 302; 36 T.C.M. (CCH) 581; T.C.M. (RIA) 770138; May 10, 1977, Filed William R. Bagby, for the petitioners. Jack A. Joynt, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Sec. 6653(b) [1] Year
Deficiency
addition to tax
1968
$31,547.55
$15,773.78
1969
4,721.74
2,360.87
The issues both as to the underlying deficiencies *303 and additions to tax depend upon whether Ellis V. Brown fraudulently overstated his basis in certain securities in reporting gain on the disposition of such securities for 1968 and 1969 or, with respect to 1968, fraudulently understated the amount realized on the sale of certain securities in that year. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulation of facts is incorporated herein by this reference. Petitioners are husband and wife who resided in Nicholasville, Kentucky, at the time of filing their petition herein. They filed joint Federal income tax returns for 1968 and 1969. Ellis V. Brown (hereinafter referred to as "Brown") holds a Ph.D. degree in organic chemistry. His employment history is as follows: research chemist at Chas. Pfizer & Co., Inc. (Pfizer) (1937-1947); associate professor of chemistry at Fordham University (1947-1953); professor of chemistry at Seton Hall University (1953-1959); and professor of chemistry at the University of Kentucky (1959-1974). Since 1974, Brown has been an emeritus professor of chemistry at the University of Kentucky. Pursuant to an employee stock offering in 1941, Brown purchased 150 *304 shares of Pfizer common stock for $6,979.50 or $46.53 per share. From that time until January 1, 1968, his shareholdings in Pfizer increased as follows: Year
Event
No. shares held
1942
Stock split (3.25 for 1)
487.5
1942
Purchase (.5 share)
488
1945
Stock split (3 for 1)
1,464
1951
Stock split (3 for 1)
4,392
1958
Sale (100 shares)
4,292
1959
Stock split (3 for 1)
12,876
1961
Sale (100 shares)
12,776
1961
Sale (100 shares)
12,676
1964
Sale (100 shares)
12,576
Brown's per share basis in the Pfizer stock was $0.53 from 1959 through the years in question under the allocation rules of section 307. During the years at issue, Brown disposed of the following amounts of his Pfizer stock: Date of disposition
No. of shares
Net amount realized
March, 1968
3,700
$220,512.50
June, 1968
100
7,273.52
June, 1968
400
28,994.21
September, 1968
300
19,497.95
January, 1969
500
36,242.75
April, 1969
200
14,946.63
Each of these dispositions was reported on Brown's Federal income tax returns. However, on his 1968 return, he lumped the two June, 1968, transactions together and reported the sale of 500 shares and *305 an amount realized of $28,994.21. In computing his gain realized from all of these dispositions, Brown used a basis of $25.00 per share. Thus, he claimed a $112,500.00 basis for the 4,500 shares transferred in 1968 and a $17,500.00 basis for the 700 shares transferred in 1969. Brown failed to report any capital gain in respect of his 1968 and 1969 stock transfers on his Kentucky income tax returns. On his 1964 Federal income tax return, Brown had reported his sale of 100 shares and used a $27.50 per share basis to compute his gain. Brown prepared his own tax returns. On one occasion, during the years at issue, he had a question about the mechanics of the alternative tax on capital gains and sought assistance from the Internal Revenue Service in computing the same.Brown's recordkeeping was the maintenance of cancelled checks and bank statements and the keeping of certain receipts in a manila envelope. Other than his Pfizer shares, he had limited, if any, investment experience. Prior to 1967 or 1968 when he was advised to do otherwise, he kept his Pfizer stock in a box in his closet. In calculating his taxes for 1968, Brown made arithmetic errors which caused him to pay *306 more than $1,000 in excess of the liability owing, based on the facts as contained in his return, for which he received a refund in 1969. During the course of respondent's audit of petitioners' 1968 and 1969 tax returns, Brown was cooperative and furnished all requested documents. OPINION For unarticulated reasons of his own, respondent did not issue the notice of deficiency herein until more than three years after petitioners' 1968 and 1969 returns were filed. He concedes that the statute of limitations bars assessment and collection of the deficiencies asserted herein for such years, unless the returns filed were false or fraudulent with the intent to evade tax. [2] Section 6501. Since the amounts of the deficiencies are not in issue, our resolution of the issue of fraud will dispose of this case. Fraud is never to be presumed; rather, it must be proved by clear and convincing evidence. Carter v. Campbell,264 F. 2d 930, 935 (5th Cir. 1959); Green v. Commissioner,66 T.C. 538, 549 (1976); Iley v. Commissioner,19 T.C. 631, 635 (1952). The burden *307 of proving fraud is upon the respondent. Rule 142(b), Tax Court Rules of Practice and Procedure; Arlette Coat Co. v. Commissioner,14 T.C. 751 (1950). The existence of fraud is a question of fact to be resolved upon consideration of the entire record before us. Gajewski v. Commissioner,67 T.C. 181, 199 (1976). Neither gross negligence nor mere suspicion of fraud will suffice. See, e.g., Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941), remanding 40 B.T.A. 424 (1939), on remand 45 B.T.A. 822 (1941) (gross negligence); Ferguson v. Commissioner,14 T.C. 846, 849 (1950) (suspicion). Applying the foregoing principles and evaluating the testimony of the witnesses whom we observed, we conclude that respondent has failed to carry his burden of proof. As to the omission of the sales proceeds from 100 shares in 1968, we cannot say that Brown's explanation that this was a mere oversight should be rejected. As to the inflated cost basis of $25.00 per share, which petitioner used in computing his gain for the 1968 and 1969 sales, we also cannot say that the evidence is sufficient to *308 justify a finding that Brown did so intentionally.Obviously a deliberate falsification of the cost basis of property could, under certain circumstances (i.e., the simple acquisition of such property by way of purchase), support such a finding. But, in this case, the Pfizer stock was not publicly traded at the time of acquisition, there was a series of stock splits, and Brown's explanation that he determined that his cost basis was the price at which the stock was first so traded has a sufficient degree of plausibility to be accepted insofar as the fraud issue is concerned. Cf. Mitchell v. Commissioner,supra;Kellett v. Commissioner,5 T.C. 608, 616 (1945). Brown's education and sophistication would certainly justfy the conclusion that he should have known better and that he was negligent -- indeed, grossly negligent. But these elements do not constitute proof that he did know better and, therefore, that his returns were fraudulent. Nor is the fact that there may be aspects of the instant case which give rise to suspicions along these lines sufficient to justify a finding of fraud, particularly where, as was the case herein, Brown cooperated *309 fully with respondent's representatives. Marinzulich v. Commissioner,31 T.C. 487, 492-493 (1958); Switzer v. Commissioner,20 T.C. 759, 765 (1953); Ferguson v. Commissioner,supra.[3]
In the absence of fraud, the statute of limitations forecloses the assessment of the deficiencies herein. Accordingly, Decision will be entered for the petitioners.* Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Respondent has conceded the additions to tax as against Dorothy J. Brown.↩
2. We have no evidence of when the 1968 and 1969 returns were filed.↩
3. See also Morrell v. Commissioner,T.C. Memo. 1971-99; Nigra v. Commissioner,T.C. Memo. 1968-273↩.